# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
### WESTERN DIVISION

**ARVION TAYLOR, on her own behalf and others similarly situated**

**PLAINTIFF**

**v.**

**Civil Action No. 2:14-cv-02294-SHL-tmp**

**JURY TRIAL DEMAND**

**PILOT CORPORATION, a Tennessee Corporation; PILOT TRAVEL CENTERS LLC, a Delaware Limited Liability Company; and XYZ ENTITIES 1-10 (fictitious names of unknown liable entities)**

**DEFENDANTS**

## <u>ORAL ARGUMENT REQUESTED</u>

---

## DEFENDANTS' MEMORANDUM BRIEF IN OPPOSITION TO MOTION FOR CONDITIONAL CERTIFICATION

---

Before turning to the legal relief sought by Plaintiff, Pilot[1] must address several of Plaintiff's allegations and assumptions. First, Pilot never admitted Plaintiff and the Opt-Ins are similarly situated. On page 3 of her Brief,[2] Plaintiff asserts that Pilot "implicitly" did so, citing Paragraph 11 of Pilot's Answer. (Pl.'s Br., p. 3.[3]) Pilot has made no such admission, implicit or otherwise. In Paragraph 11 of its Answer, Pilot denied all allegations relating to class members. (Ans., Dkt. 39, ¶ 11.) Also, the written timekeeping policy referenced on page 18 of Plaintiff's Brief and offered as Exhibit 4 does NOT instruct managers or supervisors to manipulate time

---

[1] For ease of reference and convenience only, Defendants collectively refer to themselves as "Pilot." Also, any reference to one or both Defendants employing Plaintiff or an Opt-In is strictly for the purposes of this Response Brief.

[2] Docket Entry 53-1, Plaintiffs' Memorandum of Law in Support of Conditional Certification.

[3] Unless otherwise noted, a page number cite refers to the Docket page number, i.e., the page number placed in the header by the ECF system at the time of filing.

records or improperly enter meal breaks.[4]  To the contrary, the policy expressly states: **Do NOT enter meals and breaks unless you are confident that the Team Member did take them**. (Time Policy, Dkt. 53-6, p. 24 (emphasis in original).)

Throughout her Brief, Plaintiff represents to this Court that written policies and exhibits attached to her Motion emanate from Pilot's corporate headquarters and apply uniformly across all locations in all states.  (Pl.'s Br., p. 6.)  As explained *infra*, that representation is inaccurate and false.  Plaintiff bases this representation on nothing more than her own (and the Opt-Ins') supposition, and the representation is pure, self-serving speculation.  Plaintiff has not identified one policy or exhibit as applying uniformly across all Pilot locations and restaurants.  Likewise, Pilot has not represented that any policy or document applies uniformly across all locations and restaurants.  Pilot specifically stated in written discovery that timekeeping practices, for example, vary by location and circumstances.  (Resp. to Int. No. 1, Dkt. 53-3, p. 4.)

Pilot denies the allegations in Plaintiff's Motion and Brief as well as the alleged significance of those allegations, and where appropriate Pilot further highlights below inaccurate assumptions and assertions.

I.    <u>LAW & APPLICABLE STANDARDS</u>

    A.    **This Court should apply an intermediate or "mixed" standard in scrutinizing Plaintiff's Motion.**

All motions for conditional certification under the FLSA are decided in the trial court's discretion and granted only in "appropriate cases."  *Hoffman–LaRoche, Inc. v. Sperling*, 493 U.S. 165, 169 (1989).  Pilot agrees that courts typically perform a two-stage inquiry, as articulated in *Comer v. Wal–Mart Stores, Inc.*, 454 F.3d 544, 546 (6th Cir. 2006).  At the first stage, a named

---

[4] Also, the allegation at footnote 11 on page 18 that Pilot "mandated" changes to time records is entirely baseless.  Pilot never mandated any changes, and Plaintiff has no evidence to support this baseless allegation.  (D. Ross Dec., Ex. 1, ¶ 4; J. Anderson Dec., Ex. 2, ¶ 7.)

plaintiff must make a factual showing that "his [or her] position is similar, not identical, to the positions held by the putative class members." *Comer* at 546-47.  A named plaintiff can show he or she is similarly situated to putative plaintiffs if he or she can "make a modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law." *Id*. at 547.  At the second stage, typically brought on by a motion for decertification, courts examine more closely the question of whether particular members of the class are similarly situated.  *Comer* at 547.  Courts employ a much stricter standard at the second stage, more akin to the standards applied to a motion for summary judgment.  Plaintiff argues that a summary judgment standard would be inappropriate at this stage, (Pl.'s Br., p. 11), which Pilot does not dispute.

Pilot urges this Court to apply an intermediate or "mixed" standard to Plaintiff's Motion. The "mixed" standard is warranted because of the nature, circumstances, and posture of this case.  The first stage employs a fairly lenient standard because of the minimal evidence available to plaintiffs.  In that first stage, the plaintiff has neither conducted nor had the opportunity to conduct discovery related to the issue of conditional certification.  *See, e.g., Bowman v. Crossmark, Inc.*, 2010 WL 2837519 at *3 (E.D. Tenn. July 19, 2010).  Thus, when a plaintiff moves for conditional certification, typically the only evidence available is the complaint and affidavits.  Consequently, courts apply a lenient standard.

Here, however, for over five months, the parties have conducted—and have undeniably had the opportunity to conduct—extensive, substantive discovery related to conditional certification.  Of particular note, the Court's Scheduling Order contemplated such discovery[5] and

---

[5] *Cf. Creely v. HCR ManorCare, Inc.*, 789 F. Supp. 2d 819, 827 (N.D. Ohio 2011) (warning against "the absurd result of granting the parties time to do discovery on the conditional certification question but subsequently imposing no incremental hurdles in determining whether

specifically called for the parties to later submit a separate scheduling order that sets limits on post-certification/class discovery.  (Sch. Ord., Dkt. 36, p. 2.)  Following the Court's Order, to date, Plaintiff has been deposed; the parties (including the Opt-Ins) have exchanged written discovery; and Pilot has produced over 1,800 documents.[6]  In her Brief, Plaintiff diminishes the scope/extent of conditional certification discovery and implies that Pilot hindered Plaintiff's discovery efforts.  (Pl.'s Brief, p. 3, n.1.)  This representation is not accurate.  While Pilot objected, in part, to Plaintiff's written discovery,[7] it also responded to it, and as mentioned, produced over 1,800 documents.  Pilot further offered to make individuals or corporate representatives available for deposition, but Plaintiff declined.  Plaintiff decided not to take any depositions.

From October 14, 2014 through March 24, 2015, the parties had the opportunity to conduct and have conducted extensive, substantive discovery related to conditional certification.  This is undisputable.  This case is not one in which Plaintiff has only a complaint and a few affidavits to support her Motion, as demonstrated by Plaintiff's submission of over 300 pages of exhibits.  Accordingly, the application of the "mixed" standard is appropriate.  *See, e.g., Creely*, 789 F. Supp. 2d at 826 ("[C]ourts generally agree that allowing the parties to conduct some

---

Plaintiffs may send opt-in notices . . . .").

[6] Pilot's Third Supplemental Rule 26(a)(1) Disclosures is attached to its Response as Exhibit 3.

[7] Pilot's objections are proper.  Plaintiff's written discovery (a) improperly exceeded the Court's Scheduling Order (Resp. to Int., Dkt. 53-3, pp. 14-17), and (b) improperly sought class/post-certification discovery, for example, asking Pilot to identify "all current and former employees . . . who worked as hourly-paid Cashiers, Team Leaders, Shift Leaders and other similarly situated employees" (*id*. at pp. 12-13) or "identify every facility or location owned or operated by Pilot" (*id*. at p. 13).

targeted discovery regarding the conditional certification question takes the question beyond the stage one evidentiary boundaries of the complaint's allegations and supporting affidavits.").[8]

Moreover, the nature of this case warrants the "mixed" standard.  It is important to note if this Court were to grant Plaintiff's Motion, class discovery will expose the parties to tremendous costs.  While these costs will be tied to the nature and scope of the class, there is no denying that if Plaintiff's proposed class is certified—a class with over 82,000 potential members, (D. Ross Dec., ¶ 3), the financial costs alone will exceed hundreds of thousands of dollars.[9]  This Court can and should exercise its discretion to ensure the parties are not exposed to such tremendous costs without substantial justifications.

Given the amount of discovery thus far and the tremendous costs associated with class discovery for such an unwieldy class, this Court should scrutinize Plaintiff's Motion under the "mixed" standard—better ensuring class discovery is fruitful and focused on meritorious, manageable claims.[10]  The "mixed" standard requested by Pilot would include second stage factors and considerations, but only those second stage factors and considerations that are

---

[8] *Bowman v. Crossmark, Inc.*, 2010 WL 2837519 at *4-5 (E.D. Tenn. July 19, 2010) (same and collecting cases); *cf. Lacy v. Reddy Elec. Co.*, 2011 WL 6149842 at *3 (S.D. Ohio Dec. 9, 2011) (rejecting "mixed" standard where only the defendant had the opportunity to conduct discovery); *Pfohl v. Farmers Ins. Group*, 2004 WL 554834 (C.D. Cal. March 1, 2004) (because of discovery completed, deciding motion for conditional certification exclusively under second-stage factors).

[9] *See Basco v. Wal-Mart Stores, Inc.*, 2004 WL 1497709 at *5 (E.D. La. July 2, 2004) ("To create a collective action class, including the cost associated with that, when a Court is convinced that there is insufficient support for the same prior to certification would be an exercise in futility and wasted resources for all parties involved."); *Bowman*, 2010 WL 2837519 at * 5 (relying on *Basco*);  *Woods v. New York Life Ins. Co.*, 686 F.2d 578, 581 (7th Cir. 1982) (recognizing "a tremendous financial burden to the employer").

[10] *Freeman v. Wal-Mart Stores, Inc.*, 256 F. Supp. 2d 941, 945 (W.D. Ark. 2003) ("It would be a waste of the Court's and the litigants' time and resources to notify a large and diverse class only to later determine that the matter should not proceed as a collective action because the class members are not similarly situated."); *Rudd v. T.L. Cannon Corp.*, 2011 WL 831446 at *6 (N.D.N.Y. Jan. 4, 2011).

M ZBB 2612133 v1
2139453-000039

undisputed and will not change with the benefit of additional discovery, as recently outlined in *Anderson v. McCarthy, Burges & Wolff, Inc.*, 2015 WL 224936 at *2-*4 (N.D. Ohio Jan. 15, 2015). Based on *Anderson* and other cases applying the "mixed" standard, *supra* n. 8, the "mixed" standard includes the following:

- Whether the proposed class is similarly situated to Plaintiff, including whether Plaintiff has sufficiently identified an unlawful practice or policy, but the merits of Plaintiff's claim(s) are not weighed or addressed.

- As a matter of sound case management whether a manageable class exists.[11]

- The disparate factual and employment settings of potential class members, but only to the extent those facts and settings are undisputed and not subject to change with the benefit of further discovery.

- The geographic location of potential class members.

- The various defenses available to Pilot with respect to potential class members, but, again, the merits of those defenses are not weighed or addressed.

- The judicial inefficiencies that may result from proceeding with the proposed class.

- And, all gaps, doubts, or factual disputes are resolved in favor of Plaintiff based upon the admittedly incomplete—but undeniably substantial—factual record before this Court.

Regardless of the factors this Court ultimately applies, Plaintiff's burden "is not 'invisible' and cannot be based on the conclusory allegations of a few employees." *Gomez v. United Forming, Inc.*, 2009 WL 3367165 at *2 (M.D. Fla. Oct. 15, 2009).

### B.    Plaintiff misquotes and misapplies the Sixth Circuit's *O'Brien* decision.

*O'Brien* is one of few Sixth Circuit decisions analyzing what it means to be similarly situated for purposes of certification under the FLSA. Despite their daunting impact on FLSA

---

[11] This is traditionally a first stage factor. *See, e.g., Bowman v. Crossmark, Inc.*, 2010 WL 2837519 at *3 (E.D. Tenn. July 19, 2010) (relying on *Jimenez v. Lakeside Pic–N–Pac, L.L.C.*, 2007 WL 4454295 at *2 (W.D. Mich. Dec. 14, 2007).

litigation costs, "conditional [certification] order[s] approving notice to prospective co-plaintiffs in a suit under § 216(b) [of the FLSA] [are] not appealable." *Comer*, 454 F.3d at 549. Thus, to the extent the Sixth Circuit has addressed the meaning of similarly situated, it has almost always done so in context of decertification, not conditional certification, and *O'Brien* is no exception.

Plaintiff relies on *O'Brien* throughout her Brief, but she does not always do so accurately or completely. For example, on page 14, Plaintiff partially quotes *O'Brien*: "it is clear that plaintiffs are similarly situated when they suffer from a single, FLSA-violating policy." (Pl.'s Br., p. 14.) Unfortunately, Plaintiff omitted the important second half of the sentence: "and when proof of that policy or of conduct in conformity with that policy *proves a violation as to all the plaintiffs*." *O'Brien*, 575 F.3d at 585 (emphasis added). Thus, employees are not similarly situated merely because they purportedly suffer from a single, FLSA-violating policy, actual proof of a violation *as to all the employees* is required. As *O'Brien* instructed: "[P]roof of a violation as to one particular [employee] *does not* prove that the defendant violated any other [employee's] rights under the FLSA." *O'Brien*, 575 F.3d at 585 (emphasis added).

Plaintiff primarily relies on *O'Brien* for the proposition that she does not have to show a "unified policy" of violations in order to establish that the potential class is similarly situated. Although *O'Brien* suggested this, 575 F.3d at 584, its suggestion is *dicta*. The *O'Brien* court ultimately affirmed the district court's decision to decertify the collective action on other grounds.[12] *Id.* at 587. Moreover, in support of its *dicta*, *O'Brien* relied solely on *Grayson v. K Mart Corp.*, 79 F.3d 1086, 1095 (11th Cir. 1996),[13] an ADEA case, *O'Brien*, 575 F.3d at 584;

---

[12] *Compare Pacheco v. Boar's Head Provisions Co.*, 671 F. Supp. 2d 957, 961 (W.D. Mich. 2009) (*O'Brien* holding amounts to *dicta*) *with Ware v. T-Mobile USA*, 828 F. Supp. 2d 948, 956, n. 9 (M.D. Tenn. 2011) (disagreeing that *O'Brien* holding amounts to *dicta*).

[13] The language from *Grayson* on which the Sixth Circuit relied in *O'Brien* was itself *dicta*. The *Grayson* court simply noted that "a unified policy, plan, or scheme of discrimination may not be

but the Sixth Circuit did not explain why it declined to follow cases decided after *Grayson* that have required actual proof and evidence of class-wide discrimination. *See, e.g., Hipp v. Liberty Nat. Life Ins. Co.*, 252 F.3d 1208, 1219 (11th Cir. 2001) (holding post-*Grayson* that regardless of policy, plan, or scheme, the plaintiff must still demonstrate class-wide discrimination). The *O'Brien* court also made clear that the portion of its opinion so heavily relied on by Plaintiff was not intended "to create comprehensive criteria for informing the similarly-situated analysis," 575 F.3d at 585, but rather only to remove the "predominance" of Rule 23 criterion from FLSA collective actions. *Id.*

Even if this Court adopts Plaintiff's position of unification by theory of common policy, *O'Brien* does not absolve Plaintiff from identifying an actual policy or practice. "Failure to pay overtime," for example, is not a policy or practice, but rather a statement of a type of claim under the FLSA. To sustain her burden, Plaintiff must identify an actual policy or practice that is common to the entire class. As explained below, Plaintiff has failed to do so and cannot do so; therefore, Pilot respectfully requests that this Court deny Plaintiff's Motion.

## II.   RELEVANT FACTS & BACKGROUND INFORMATION

### A.   This Court's conditional certification analysis should focus on Store 405.

Plaintiff worked at one Pilot location, Store 405. It is located at 4949 Lamar Avenue, Memphis, Tennessee 38118. Like some locations, but not all locations, Store 405 has a retail-side and a restaurant-side. Like some locations with a restaurant-side, but not all locations with a restaurant-side, Store 405's restaurant-side is a separately branded Subway. (D. Ross Dec., ¶ 8.)

---

required to satisfy the more liberal 'similarly situated' requirement of § 216(b), even though in the instant case, we are persuaded that [plaintiffs] meet a standard of greater stringency." *Grayson*, 79 F.3d at 1095.

Store 405's retail-side is referred to as Pilot 405, and the Subway is referred to as Subway 405.[14]

(J. Anderson Dec., ¶ 2.)

Like some locations with a restaurant-side, but not all locations with a restaurant-side, Defendants employ both the Pilot 405 employees and the Subway 405 employees. (D. Ross Dec., ¶ 9.) Like some locations with a restaurant-side, but not all locations with a restaurant-side, Store 405 has a retail-side General Manager, Shaun Newbauer, and a restaurant-side General Manager, Jeff Anderson. (*Id.*, ¶ 7.) Pilot 405 employees report to Newbauer and have their own schedules, while the Subway 405 employees report to Anderson and have their own schedules. (J. Anderson Dec., ¶¶ 3, 6.) Photographs of Store 405 showing the retail-side and the separately branded restaurant-side are collectively attached to Pilot's Motion as Exhibit 4.

Pilot 405's employees concern themselves with those jobs, tasks, and duties that one associates with a Pilot Travel Center:[15] the distribution and sale of regular and diesel fuel; the care and maintenance of regular and diesel pumps; the care and maintenance of on-site showers and bathroom facilities; the operation and monitoring of CAT Scales (for weighing trucks and loads); the issuance of money orders and money transfers; check cashing; using the TRANSFLO

---

[14] Throughout discovery, the retail-side also has been referred to as the "Pilot-side" or the "travel center-side." The restaurant-side also has been referred to as the "concept-side" or specifically with respect to Store 405, the "Subway-side."

[15] At one point, Plaintiff attacks Pilot for not turning over schedules or what she believes to be all relevant job descriptions. (Pl.'s Br., p. 3, n. 1.) As for the schedules, Plaintiff's requests were part of improper written discovery served in violation of the Court's Scheduling Order. Even if they were not, Pilot does not regularly maintain schedules dating back to the time of Plaintiff's employment. As for the job descriptions, Pilot produced the job description relevant to Plaintiff. The parties disagree over the extent to which all other job descriptions are relevant at this stage, and Pilot's efforts to identify actual job titles of the Opt-Ins have been frustrated by Plaintiff's consistent use of phrases like "other hourly employees" or "however variously titled." Plaintiff has also persisted in her efforts to conflate and harmonize titles among the Opt-Ins. For example, Opt-In Brown has identified herself, in part, as a former Sandwich Artist for Pilot. (Brown Resp. Int. No. 1, Ex. 5, p. 5.) Pilot, however, does not have a "Sandwich Artist" position. "Sandwich Artist" is a term of art specific to the Subway brand, and the location where Opt-In Brown worked does not have a Subway.

Express system (which provides truck drivers access to trip documents); selling lottery tickets, showers, and other retail items, and sending faxes.  (J. Anderson Dec., ¶ 4.)

Subway 405's employees concern themselves with those jobs, tasks, and duties that one associates with a Subway: baking bread and cookies; food preparation; making Subway sandwiches; and the selling of Subway extras, like chips, bottled water, soft drinks, and fountain beverages.  (*Id*. at ¶ 5.)

Pilot 405 employees do not talk with Subway 405 employees about "what [goes] on" with respect to "either side," and they do not interact with each other beyond general greetings, such as saying "hey" or "how are you doing?"  (Taylor Dep., Dkt. 53-15, 90:23-91:5.)

Despite their importance, these undisputed facts are absent from Plaintiff's Motion. Plaintiff omitted these undisputed facts because they demonstrate the disparate employment settings of potential class members, strongly weighing against conditional certification of the tremendously broad class sought by Plaintiff, and one reason why Plaintiff's Motion should be denied.

      **B.**    **This Court's conditional certification analysis should focus on Plaintiff's actual testimony.**

Plaintiff started her employment at Store 405 in June 2011.  (Taylor Dep., 200:1-3; 25:2-4.)  At all times, Plaintiff worked for Subway 405, the restaurant-side.  Plaintiff never worked for Pilot 405, the retail-side.  (*Id*. at 19:9-16.)  Plaintiff's employment ended in February 2013 following an inappropriate altercation with a Subway 405 customer.  (*Id*. at 193:12-18, 42:16-22.)

As Plaintiff made clear, with respect to Pilot 405 (the retail-side), she never cleaned the showers (*id*. at 20:17-20) or otherwise ever did anything with respect to cleaning Pilot 405 (*id*. at 21-24), not even sweeping or mopping (*id*. at 34:19-21).  Plaintiff never stocked Pilot 405's

shelves or placed orders for Pilot 405.  (*Id*. at 91:6-11.)  She also never handled, "counted

down," or even worked Pilot 405's cash register.  (*Id*. at 85:16-18, 108:18-20.)  In fact, Plaintiff

does not even know the "register procedures" for Pilot 405.  (*Id*. at 85:3-5.)

Plaintiff reported to Jeff Anderson, Subway 405's General Manager.  (*Id*. at 22:21-23,

93:17-18; Resp. to Int. No. 8, Dkt. 53-3, p. 11; Pl.'s Resp. to Int. No. 1, Ex. 6, p. 1; J. Anderson

Dec., ¶ 2.)  The retail-side General Manager had no duties with respect to Plaintiff, and she had

no duties with respect to him.  (Taylor Dep., 82:3-6.)  When Plaintiff clocked-in or clocked-out,

she did so on Subway 405 cash register (Taylor Dep., 34:25-35:8), not the retail-side cash

registers.

Plaintiff was a Subway 405 Cashier (*id*. at 18:8-10) and later a Subway 405 Team Lead

(*id*. at 42:20-24).  As a Subway 405 Cashier, Plaintiff's duties included "making sandwiches,

baking bread, baking cookies, running the register, [and] sometimes sweeping and mopping [the

Subway].  That's it."  (*Id*. at 34:11-21.)  Plaintiff "could not think of" any other duties as a

Subway 405 Cashier.  (*Id*. at 34:22-24.)  As for her time as Subway 405  Team Lead, Plaintiff

testified that she had the increased obligation of advising Anderson about performance and

disciplinary problems (*id*. at 99:12-21) and also dealing with inventory (*id*. at 106:6-11).

At page 14 of her Brief, Plaintiff asserts that she performed functions "for Pilot."  (Pl.'s

Br., p. 14.)  Although Plaintiff repeats this "for Pilot" generalization throughout her Motion and

Brief, the mantra is disingenuous and misleading.  Plaintiff only ever worked for Subway 405.

Plaintiff never worked for the retail-side of Store 405 or any other Pilot location.  While Pilot

does not dispute, for the limited purposes of this Response, that it employed Plaintiff under the

FLSA, the conditional certification analysis requires this Court to look beyond what entity

merely employed Plaintiff.  It requires this Court to examine what Plaintiff did for the employing

entity, *Comer* at 546-47, and Plaintiff only ever worked for Subway 405, performing Subway-specific tasks and duties.   Plaintiff has no knowledge or experience with retail-side jobs or duties for any location.  This again weighs heavily against nationwide certification of any class, especially a class of all retail and restaurant employees.

Also, during her deposition, Plaintiff discredited and outright denied several of the claims she now relies on in moving for conditional certification.  For example, Plaintiff's Motion heavily relies on the corporate restaurant-side Team Lead job description, claiming it establishes that the proposed class is similarly situated.  (Pl.'s Br., p. 15.)  Importantly, Plaintiff admitted under oath that aspects of that job description did not apply to her at Subway 405.  (Taylor Dep., 84:5-8, 85:19-86:5, 91:25-92:7, 92:13-17, 94:25-95:11, 97:15-17, 97:20-25.)  Therefore, by Plaintiff's admission, the corporate, restaurant-side Team Lead job description is not uniformly adopted across all locations or restaurants.

Plaintiff's Motion also heavily relies on Pilot's Employee Handbook, again claiming it establishes that Plaintiff and the proposed class are similarly situated.  (Pl.'s Br., pp. 17-18; April 2011 Emp. Hand., Dkt. 53-5, pp. 2-8.)  Plaintiff, however, testified that aspects of Pilot's Employee Handbook did not apply to her at Subway 405, including policies on breaks, time entry, and time approval, all of which are the very basis of this lawsuit.  (Taylor Dep., 115:6-10, 121:19-20, 124:13-125:7, 128:20-129:2, 133:11-15.)  By Plaintiff's admission, Pilot's Employee Handbook is not adopted uniformly across all locations or restaurants.  Plaintiff also testified she (and presumably Subway 405) never received later versions of Pilot's Employee Handbook.  (*Id.* at 33:5-34:10.)  But Plaintiff now relies on later versions of Pilot's Employee Handbook in her effort to conditionally certify a class.  (Pl.'s Br., pp. 17-18; June 2012 Emp. Hand., Dkt. 53-5, pp. 9-15; June 2013 Emp. Hand., Dkt. 53-5, pp. 16-22.)

M ZBB 2612133 v1
2139453-000039

With respect to time entry practices, Pilot has locations where employees review and approve their timecards each week (Resp. to Int. No. 1, Dkt. 53-3, pp. 4-5), and this practice is outlined in Pilot's Employee Handbook (April 2011 Emp. Hand., Dkt. 53-5, p. 7).  But again, Plaintiff testified that this practice did not apply to her at Subway 405.  (Taylor Dep., 200:11-201:15.)  Moreover, Plaintiff has never heard of the timekeeping system she now claims to be central to conditionally certifying a class (*id*. at 36:7-12), and prior to preparing for her deposition, she had never seen the time records she now argues warrant class certification (*id*. 187:17-188:14).[16]  The significance of this testimony cannot be understated as it further evidences non-conformity with the corporate, restaurant-side Team Lead job description, which itself lists management of the timekeeping system (Blue Cube) as a primary responsibility.  (Job Disc., Dkt. 53-11, p. 2.).  These distinctions further tip the scales against conditional certification, especially on the nationwide scale sought by Plaintiff.

Finally, during her deposition, Plaintiff made clear: (i) she did not know any Team Leads with Pilot 405 (the retail-side) or if Pilot 405 even had any Team Leads (*id*. at 81:16-21); (ii) she did not know anybody else who worked at any other Pilot locations (*id*. at 104:3-9, 104:20-25); and (iii) she did not know if anyone with Pilot 405 worked through their meal breaks or were not paid overtime (*id*. at 185:10-23).  Yet with her Motion, Plaintiff claims she knows of other current and former employees at Pilot locations across the country that should be included in a conditionally certified class.  (Taylor Dec., Dkt. 53-4, pp. 2-8, ¶¶ 2, 5, 18-21.)  Of the people Plaintiff listed—by first name only—Pilot has been able to identify two: Daniel Williams and Arealie Boyd.  Ms. Williams' testimony is attached to Pilot's Response as Exhibit 7, and Ms. Boyd's testimony as Exhibit 8.  Both Ms. Williams and Ms. Boyd testified that they have been

---

[16] Exhibit 11 to Plaintiff's Motion (Dkt. 53-13) was Exhibit 13 to Plaintiff's deposition (Taylor Dep., 5:1).

fully compensated for all hours worked, including any hours spent working before/after a shift or during a break.  This testimony highlights the lack of injury and similarity among Plaintiff's proffered class and further calls for Plaintiff's Motion to be denied.

Plaintiff's deposition testimony is fundamentally different than the conclusory allegations and accusations offered in support of her Motion.  In conducting its conditional certification analysis, this Court should weigh and consider Plaintiff's actual testimony—not the conclusory allegations and accusations of her Complaint, Motion, and Brief.[17]  In so doing and in applying the "mixed" standard, this Court should conclude that Plaintiff's Motion should be denied.

### C.   This Court's conditional certification analysis should focus on the FLSA violations actually alleged by Plaintiff.

In her deposition, Plaintiff described the ways she believed Pilot violated the FLSA.  Should this Court's analysis proceed to the point of identifying an allegedly unlawful policy or practice, then any identification should be based on Plaintiff's actual testimony—not the conclusory allegations and accusations in Plaintiff's Complaint, Motion, and Brief.

First, to be clear, Plaintiff admitted on multiple occasions during her deposition that no one ever told her she needed to work off-the-clock without compensation.  (Taylor Dep., 60:4-8, 61:17-20, 72:14-22.)  Plaintiff's supervisor also testified that he never told Plaintiff to work off-the-clock without compensation.  (J. Anderson Dec., ¶¶ 7-8.)

According to Plaintiff, she *voluntarily* reported to work early and started working before the start of her shift.  (*Id*. at 64:14-22.)  Plaintiff also testified she would clock-out at the end of

---

[17] *Bacon v. Eaton Aeroquip, L.L.C.*, 2012 WL 4321712 at *2 (E.D. Mich. Sept. 20, 2012) (vague and conclusory allegations lacking relevant facts or assertions of support for a nationwide, uniform policy do not meet the plaintiff's burden for conditional certification under O'Brien); *Trinh v. JP Morgan Chase & Co.*, 2008 WL 1860161 at *4 (S.D. Cal. Apr. 22, 2008) ("Plaintiffs provide no real evidence, beyond their own speculative beliefs, suggesting that all JPMorgan loan officers across the country, regardless of location or experience, receive the same compensation and are required to work in the same manner.").

her shift, and then *voluntarily* continue working.  (*Id*. at 143:4-10.)  Plaintiff testified she, at times, worked through her unpaid meal break and/or she did not get to take her full unpaid meal break.  (*Id*. at 190:10-14.)  If Plaintiff worked through her meal break, it was only because Subway 405 was busy.  There were times, however, Subway 405 was busy and Plaintiff took her full meal break without interruption.  (*Id*. at 118:3-18.)  Whether Plaintiff worked through her meal break was in no way related to whether Pilot 405 (the retail-side) was busy.

Plaintiff alleges when she worked off-the-clock, she told her General Manager, Jeff Anderson.  In response, Anderson told her he would correct or fix her time to reflect the off-the-clock work.  (*Id*. at 131:3-11, 143:13-18, 203:12-16, 202:19-203:1; J. Anderson Dec., ¶¶ 10-11.)  It is undisputed that Anderson never said he would *not* credit Plaintiff for all hours worked.  (Taylor Dep., at 203:5-16, 203:20-22.)  As for the alleged FLSA violation on which Plaintiff bases her Complaint, Plaintiff believes that Anderson did not credit her for the off-the-clock work like he said he would.  (*Id*. at 71:4-11, 172:16-23, 203:17-19.)  But again, *no one ever told or instructed Plaintiff to work off-the-clock* (*id*. at 60:4-8, 61:17-20, 72:14-22; J. Anderson Dec., ¶¶ 8-9.), and while Plaintiff may have been instructed to take her unpaid meal break, she was also *instructed not to work during that unpaid meal break*.[18]  (*Id*. at 59:6-18, 116:9-14, 116:24-117:1, 117:18-25).  Thus, any claim to the contrary cannot form the basis of a policy or practice around which to certify a class.  Collectively, the above testimony represents the extent of Plaintiff's alleged FLSA violations by Pilot,[19] and it demonstrates the individualized nature of her claim: a claim based on one manager, of one restaurant, within one Pilot location, who said

[18] Even if Anderson did not credit Plaintiff's time, there is no evidence or facts before the Court that *all* Restaurant General Managers (much less all managers and/or supervisors) failed to credit time for all 82,000+ members of Plaintiff's proposed class.

[19] While Plaintiff (with the conspicuous assistance of her counsel) arguably testified about what she now calls Pilot's "unlawful auditing policy," as discussed in the next section, this claim is not properly before the Court.

he would correct one employee's time and then allegedly failed to do so.  Plaintiff's individual

claim is not one around which to certify the class sought by Plaintiff, and Plaintiff's Motion

should be denied.

### III.   ARGUMENTS & AUTHORITIES

#### A.   Plaintiff has not sufficiently identified a policy or practice.

From Plaintiff's Complaint and Motion, Plaintiff has asserted three allegedly unlawful

policies or practices.  As none of the policies or practices are sufficient to sustain the class sought

by Plaintiff, this Court should deny Plaintiff's Motion.

First, in her Complaint, Plaintiff asserted an auto-deduction policy, i.e., that Pilot was

automatically deducting meal breaks regardless of whether an employee actually took his or her

meal break.  (Compl., Dkt. 1, ¶¶ 8, 12, 28.)  Plaintiff has since abandoned this argument and

made clear she is not pursuing an auto-deduction policy.  (Taylor Dep., 169:1-4, 171:24-172:7;

Pl.'s Br., p. 3, n. 2.)  Therefore, this policy/practice cannot sustain the class sought by Plaintiff,

and Plaintiff's Motion should be denied.

Second, in her Motion, Plaintiff—for the very first time—asserted an "unlawful auditing

policy."  (Pl.'s Br., pp. 5-6.)  This policy was not pleaded or alleged in Plaintiff's Complaint.

(Compl., Dkt. 1, passim.)  It, therefore, is not properly before the Court[20] and cannot support or

sustain the proposed class.  Plaintiff's Motion should be denied accordingly.  Alternatively, even

if it is properly before the Court, as discussed *infra*, nationwide certification under the policy

remains unwarranted and inappropriate.  Therefore, Plaintiff's Motion should still be denied.

---

[20] *Cf. Bishop v. Lucent Technologies, Inc.*, 520 F.3d 516, 521-22, n. 1 (6th Cir. 2008) (affirming adverse ruling against the plaintiff where plaintiff failed to plead information otherwise in her possession); *Horton v. Potter*, 369 F.3d 906, 911 (6th Cir. 2004) (with respect to Fed. R. Civ. P. 8(c), failure to plead waives defense); *Johnson v. Sales Consultants, Inc.*, 61 F.R.D. 369, 371-72 (N.D. Ill. 1973) (finding substantial prejudice to the defendant under Rule 15 where the plaintiff sought to "substantially change" theory of case).

Third, returning to her Complaint, Plaintiff asserted the policy/practice to be failing to pay for all hours worked in excess of forty hours for any given week.  (Compl., Dkt. 1, ¶¶ 8, 12, 28.)  This, however, is not a policy or practice.  It is simply a regurgitation of a type of claim under the FLSA.  If it were accepted as a legally sufficient policy or practice, all standards for certification would be superfluous.  In every FLSA collective action, regardless of location, status, classification, title, job, duties, theory, defenses, or proof, to establish they were similarly situated, any current and former employees of a company could simply claim:  "we were not paid overtime."  No circuit has accepted this as the certification standard, and this Court should not in this case.  To obtain certification, Plaintiff is required to identify a legally sufficient policy or practice—applicable to the entire class.  Plaintiff has failed to do so and her Motion should therefore be denied.

**B.    Even assuming Plaintiff could identify a policy or practice, Plaintiff cannot otherwise sustain her proposed class.**

Assuming Plaintiff has identified a legally sufficient policy or practice, which she has not, her Motion should still be denied as conditional certification of the proffered class is not "appropriate."  *Hoffman–LaRoche, Inc.*, 493 U.S. at 169 (certification should be granted only in "appropriate cases").  Plaintiff's proffered class is: all current and former hourly Cashiers, Team Leaders, and Shift Leaders (and/or, it is unclear) others however variously titled that worked at any Pilot location, store, or restaurant anywhere in the country.  (Pl.'s Mot., Dkt. 53, ¶ 1.)  The facts and circumstances of this case do not warrant certification of this class and do not warrant nationwide certification of any class.  This Court should reject Plaintiff's attempt to certify the proposed class, especially under the "mixed" standard, and Plaintiff's Motion should be denied.

As outlined above, *supra* pages 9-10, Store 405 is not like all other locations across the country or even within Tennessee.  For example, not all locations have a restaurant-side.  To the

extent a location has a restaurant-side, not all restaurants are Subways, and Defendants do not always employ the restaurant-side employees.  There are also locations with a restaurant in which Defendants do not employ the restaurant-side employees.  (D. Ross Dec., ¶¶ 5-9.)

As Plaintiff testified, Subway 405's break policies differ from Pilot's Employee Handbook, *supra* pages 12-13, and Pilot's break policies are not the same at all other locations. (D. Ross Dec., ¶ 10.)  Subway 405's timekeeping policies differ from Pilot's Employee Handbook, *supra* page 13, and Pilot's timekeeping policies are not the same as all other locations. (Resp. to Int. No. 1, Dkt. 53-3, p. 4.)  Plaintiff also testified that her job duties were different than the at-issue corporate job description, *supra* page 12, and that she was never—not once—told or instructed to work off-the-clock without compensation, *supra* pages 10, 15.  No amount of discovery is going to change these facts.  These facts do not justify certification of the proposed class because the class is not similarly situated, and these facts do not warrant nationwide certification of any class.

The authorities relied upon by Plaintiff also do not warrant or otherwise call for nationwide certification of the proposed or any class, see *Carrera* (Pl.'s Br., p. 19), *Ware*, *Thompson*, and *Burdine* (*id*., p. 20).  In *Carrera*, contrary to Plaintiff's assertion, the court did not rely upon prior lawsuits in deciding that nationwide certification was appropriate.  The *Carrera* court only noted that the plaintiff "in essence" urged the court to do so.  *Carrera*, 2011 WL 1303151 at *3.  Accordingly, *Carrera* should be disregarded.[21]  As for *Ware*, the "nationwide" certification dealt only with twenty-four locations, 2012 U.S. Dist. LEXIS 143439 at *2, not hundreds and hundreds of locations as in this case (Store List, Dkt. 53-7).  Also, the

---

[21] Also, the cases the *Carrera* plaintiff relied on were cases in which previous classes had been certified.  *Carrera*, 2011 WL 1303151 at *3, n. 7.  The one Pilot case cited by Plaintiff, *Bowkley*, was a case filed by Plaintiff's counsel.  No discovery was conducted in the case and no motion for conditional certification was filed.  The case concluded shortly after it was filed.

*Ware* defendant did not oppose nationwide conditional certification. *Id.* at *20-21. Here, Pilot opposes nationwide certification. Accordingly, *Ware* is inapposite. *Burdine* is inapposite for the same reason. *See Burdine*, 2011 WL 2976929 at *5 (the defendant did not oppose nationwide notice). Finally, in *Thompson*, the court rejected the plaintiffs' request for nationwide certification of their off-the-clock claim, just as this Court should reject Plaintiff's request for national certification of her off-the-clock claim. *See Thompson*, 2014 WL 884494 at *5 ("[The defendant] is right that Plaintiffs have submitted no evidence to support conditional certification across the company."). As demonstrated, the authorities relied upon by Plaintiff do not support nationwide certification of any class, and neither do the facts and circumstances of this case.

Moreover, the class proposed by Plaintiff would be impossible for this Court to manage, and individualized assessments and fact-specific defenses would frustrate—if not outright prevent—any adjudication or judicial determination on a class basis. Pilot estimates the requested class contains more than 82,000 potential members, and Plaintiff cannot offer any argument or authority explaining how this Court could reasonably and efficiently manage such a broad class. Plaintiff also cannot dispute that thousands of supervisors and managers cover the proposed class members. Under any theory of Plaintiff's case, at a minimum, depositions and written discovery will be required from each and every class member and manager/supervisor.[22] This, too, is undisputed. Pilot further has multiple Plaintiff- and opt-in-specific defenses.[23] Each

---

[22] *See, e.g., England v. New Century Financial Corp.*, 370 F.Supp.2d 504, 5011 (M.D. La. 2005) ("multitude of different managers at different geographical locations across the country" prevents conditional certification).

[23] For example: (i) statute of limitations (Ans., Dkt. 39, p. 5, ¶ 3); (ii) arbitration (Ans., p. 6, ¶ 4); (iii) any time worked off-the-clock was not compensable; (iv) certifying hours prior to payment (Ans., p. 6, ¶ 17); (v) offset (Ans., p. 7, ¶ 13; Aff. Def., Dkt. 45); (vi) not working in excess of forty hours (Ans., p. 7, ¶ 15); and (vii) failure to report hours worked off-the-clock (Ans., p. 7, ¶ 16).

of which is viable, and each of which requires individualized facts and arguments.[24]  Based on all of this, as a matter of sound case management, Plaintiff has not sought a manageable class, and the judicial inefficiencies that will result from proceeding with the class sought by Plaintiff are significant and cannot be understated.  Therefore, again, the class sought by Plaintiff is not appropriate nor is nationwide certification of any class.  Plaintiff's Motion should be denied accordingly.  *Cf. Hoffmann-LaRoche*, 493 U.S. at 170 (section 216(b) classes are based on a theory of judicial economy, under which "[t]he judicial system benefits by *efficient resolution* in one proceeding of common issues of law and fact arising from the same allegedly discriminatory activity").[25]

While the complete facts central to the Court's analysis are detailed throughout this Response Brief, even under the above, abbreviated analysis, certification of Plaintiff's class (and nationwide certification of any class) is not warranted as Plaintiff is not similarly situated to the proposed class (nor are all proposed class members).  This Court should deny Plaintiff's Motion just as other courts have when faced with broad, diverse, and unmanageable classes.[26]

---

[24] As of April of 2012, any new hires for Pilot signed arbitration agreements.  (D. Ross Dec., ¶ 12.)  Therefore, any potential class that includes employees hired before April 2012 will not be similar as a matter of law to those hired after April 2012.  In the alternative, As Pilot has no intention of waiving its arbitration defense, by separate motion or filing, Pilot will address management and dismissal of Opt-Ins subject to arbitration.

[25] *See also Hickson v. U.S. Postal Serv.*, 2010 WL 3835887 at *14 (E.D. Tex. July 22, 2010) (rejecting 20,000 person class, and collecting cases where courts denied conditional certification for proposed classes of, for example, "7,000," "20,000-30,000," and "1,000"), *report and rec. adopted*, 2010 WL 3835885 (E.D. Tex. Sept. 28, 2010).

[26] *See, e.g., Hickson* at *14; *Hart v. JPMorgan Chase Bank, N.A.*, 2012 WL 6196035 at *4 (M.D. Fla. Dec. 12, 2012) (finding conditional certification inappropriate based on divergent off-the-clock violations); *Beecher v. Steak N Shake Operations, Inc.*, 2012 WL 5473753 at *10 (N.D. Ga. Sept. 27, 2012) (finding nationwide conditional certification inappropriate based on likelihood of unmanageable class from diverging off-the-clock claims, policies, and individualized allegations).

**C.    If this Court must grant conditional certification, Pilot proposes conditional certification of a properly tailored and defined class.**

As explained above, this Court permitted discovery prior to conditional certification.  As in any case, the purpose of conditional certification discovery is to better identify the facts and circumstances upon which a class may be conditionally certified, if any.  The parties' discovery efforts were fruitful and focused almost exclusively on Plaintiff, as she is the one around which any class must be certified.  *O'Brien*, 575 F.3d at 584.  Based on that discovery, including Plaintiff's testimony and related facts, if the Court must conditionally certify a class, Pilot proposes conditional certification of the following:

> All current and former hourly, non-exempt employees, regardless of title or location, who reported to Jeff Anderson in the three years preceding the date on which this Court enters its order certifying this class and who claim they have not received time and one-half of their regular rate of pay for all hours worked in excess of forty for any given week.

While Pilot proposes this class, it remains adamantly opposed to conditional certification of the class sought by Plaintiff.

## IV.    LIMITATIONS ON THE CLASS, THE NOTICE, AND THE CONSENT

Should this Court certify any class, Pilot respectfully asks this Court to issue reasonable deadlines for the parties to negotiate and submit a proposed notice and a proposed consent for this Court's approval, as well as any deadlines and written objections.  Pilot also makes this request in light of the fact that it cannot reasonably or adequately address Plaintiff's Motion, Brief, Proposed Notice, Proposed Consent, and Proposed Order Granting Motion, which grants relief not addressed or otherwise prayed for in her Motion, within the twenty-five pages otherwise allowed for this Response Brief.  *See* LR 7.2(e); Order, Dkt. 55.

### A.      The relevant time period should be limited.

While reserving any and all two- versus three-year arguments, Pilot consents to the relevant time period for any class being three years preceding the date of the Court's order on Plaintiff's Motion.  By using the date of this Court's order, as opposed to the date on which Plaintiff filed her Complaint, the risk of opt-ins with claims otherwise barred by the statute of limitations is lessened.

### B.      The identifying information for potential class members should be limited.

Plaintiff's request for job titles, social security numbers, e-mail addresses, and telephone number should be denied.  (Pl.'s Mot., p. 2; Pl.'s Br., pp. 20-21.)  Plaintiff has no need for this information.  Job titles will not assist Plaintiff in disseminating notice.  Pilot is not arguing that such information is not relevant or discoverable, only that it need not be provided for all potential class members.  It is a topic for class discovery, not dissemination of notice.

Likewise, Plaintiff has no need for social security numbers or telephone numbers.  Pilot's current and former employees have a substantial privacy interest in the latter, and Pilot has a duty and obligation to protect that privacy interest.  As for the telephone numbers, soliciting opt-ins by phone needlessly increases the likelihood that information beyond the Court-approved notice is provided to (and used to recruit) opt-ins.  Any version of the Court-approved notice will have a phone number for Plaintiff's counsel, of which a potential opt-in can make use at his or her discretion.  Also, Pilot does not regularly and electronically maintain telephone number(s) for all hourly employees.  (D. Ross Dec., ¶ 11.)  To even attempt to obtain such information, Pilot would have to locate and perform an enormously burdensome and costly review of thousands of physical files, and then manually input the information (without error) into an electronic format.  *See infra*, n. 29.

Finally, Plaintiff has not shown why e-mail addresses are required and why dissemination by mail is not sufficient.  Even if Plaintiff had, Pilot does not regularly and electronically maintain e-mail addresses for all hourly employees.  (D. Ross Dec., ¶ 11.)  Therefore, to even attempt to obtain such information, Pilot would have to locate and perform an enormously burdensome and costly review of thousands of physical files, and then manually input the information (without error) into an electronic format.[27]

When balancing the need (which is virtually none) with the burdens, costs, and potential consequences (all of which are varied and substantial), this Court should deny Plaintiff's request for job titles, social security numbers, e-mail addresses, and telephone numbers.  However, in the event a notice is returned as undeliverable, Pilot will agree to provide the last four of that individual's social security number (to assist with identifying alternative addresses) and also to make a reasonable, good-faith search for that individual's e-mail address, if any.

### C.   Plaintiff has not established why workplace postings or "other electronic submissions" are necessary, and they are not otherwise warranted in this case.

Plaintiff has not established how traditional means of disseminating notice are ineffective, inappropriate, or insufficient.  Thus, non-traditional means, such as posting or soliciting/recruiting opt-ins via a website, should be denied.  (Pl.'s Br., pp. 20-21.)  Posting the notice in the workplace would undoubtedly place Pilot's supervisors and management personnel in the difficult and inappropriate position of explaining to potential opt-ins their rights and

---

[27] *Contra Harris v. Chipotle Mexican Grill, Inc.*, 2014 WL 4449670  at *16 (D. Minn. Apr. 10, 2014) ("Chipotle has not identified any reason that email notification is not appropriate or unfairly burdensome . . . ."); *Will v. Panjwani*, 2013 WL 5503727 at *6 (S.D. Ind. Oct. 1, 2013) ("Unlimited Mobile does not argue that it would be burdensome to produce the home telephone numbers and e-mail addresses of the potential opt-in plaintiffs . . . . it does not present a compelling reason for not producing the home telephone numbers and e-mail addresses of the potential opt-in plaintiffs at the same time it produces the names and home addresses of those individuals.").

obligations with respect to joining this lawsuit against Pilot. Also, because all persons in the workplace will see the notice and can then join the lawsuit, posting hinders efforts by the parties to ensure notice reaches only those proper members of the class. Otherwise, additional time and resources by all parties and this Court must be spent sorting and removing improper opt-ins.

The use of a website for recruiting and soliciting potential class members and/or filling out and completing consents presents the same problems. Dissemination of a website (and the individuals who subsequently visit that website) cannot be controlled. Websites are visible to the general public and are quickly located through a simple Internet search. They, therefore, needlessly increase the likelihood that individuals outside of the Court-approved class will join this lawsuit. For those same reasons, Plaintiff's counsel should be prohibited from advertising this lawsuit or soliciting potential opt-ins through a website or the Internet. Such advertisements and solicitations cannot be targeted or controlled, and they further needlessly increase the likelihood of improper opt-ins joining this lawsuit.

When balancing the need (which, again, is virtually none) with the potential consequences (all of which, again, are varied and substantial), this Court should deny Plaintiff's request to disseminate notice and recruit class members through non-traditional means—i.e., means other than by mail. Pilot will not oppose opt-ins electronically submitting completed consents, for example, via fax, e-mail, or through a non-branded/non-soliciting upload website (for example, a website where an opt-in can (simply and only) upload a scan of a completed consent as opposed to sending it by mail or e-mail).

**D.     The language of the notice and consent should be revised and modified.**

Pilot objects to the adversarial as opposed to informational nature of Plaintiff's proposed notice and consent. Again, Pilot respectfully requests that after this Court rules on Plaintiff's

Motion, the parties be given an opportunity to negotiate and submit a proposed notice and consent for this Court's approval, as well as any deadlines and written objections.

Notwithstanding, first, the notice should warn potential class members that, if Pilot prevails, all class members may be held liable and responsible for Defendants' costs. *See, e.g., Knispel v. Chrysler*, 2012 WL 553722 at *8 (E.D. Mich. Feb. 21, 2012) ("Several courts, including district courts within the Sixth Circuit, have held that potential plaintiffs, in order to make an informed decision about whether to opt-in, should be made aware that there is a possibility that they may be liable for a defendant's costs of litigation.").

Second, the notice should inform potential class members that they may be required to participate in this litigation. A lawful notice, explained one court, should inform potential class members "not only about the nature of th[e] action and their rights, but [also] about their potential obligations," including that they may be asked to: (1) appear for a deposition (in Memphis, Tennessee); (2) respond to written discovery; (3) appear at a trial (in Memphis, Tennessee); and again, (4) if Plaintiff does not prevail in the lawsuit, they may be compelled to pay costs. *Reab v. Elec. Arts, Inc.*, 214 F.R.D. 623, 630-34 (D. Col. 2002). Absent such notification, potential class members may believe that they can simply sign up and wait for a check without having any active involvement in the litigation.

Third, the notice should inform potential class members that they have the right to obtain their own counsel. *See, e.g., Heaps v. Safelite Solutions, LLC*, 2011 WL 1325207 at *9 (S.D. Ohio Apr. 5, 2011) ("The Court finds that a statement indicating that the potential plaintiffs have the right to choose their own counsel should appear in the notice.") (relying on a collection of cases).

M ZBB 2612133 v1
2139453-000039

Fourth, both the notice and consent should avoid any reference to "unpaid wages." This suggests Plaintiff has established or proven that Pilot failed to pay their employees all earned wages. Rather, the notice and consent should only reference Plaintiff's "claim" that work was performed off-the-clock without compensation.

Finally, the consent should specify that consent is to pursue only the claims described in the notice (i.e., it is not a general consent to pursue any or other claims against Pilot).

## V.     CONCLUSION

Pilot is mindful of the cases routinely granting conditional certification, and those cases will undoubtedly be heavily cited in Plaintiff's Reply Brief. This case, however, is anything but routine. The class proposed by Plaintiff is extraordinary and unprecedented. In fact, Plaintiff has not offered (and Pilot cannot find) one single opinion or ruling from anywhere in the country conditionally certifying an FLSA class as enormous, diverse, and unmanageable as the class sought by Plaintiff. The reason no other court has done so is because the class sought by Plaintiff is not warranted, permitted, or appropriate under the law. Accordingly, Plaintiff's Motion should be denied.   In the alternative, to the extent the Court must conditionally certify a class, the Court should certify the class proposed by Pilot.

This, the 24th day of April, 2015.

Respectfully Submitted,

**PILOT CORPORATION AND PILOT TRAVEL CENTERS LLC**

By Their Attorneys,

BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ, PC

By:     *s/ Jenna M. Bedsole*
JENNA M. BEDSOLE

**OF COUNSEL:**

Jenna M. Bedsole (Ala. Bar No. 4603-N74J)
*Admitted Pro Hac Vice*
BAKER, DONELSON, BEARMAN,
  CALDWELL & BERKOWITZ, PC
Wells Fargo Tower
420 Twentieth Street North, Suite 1400
Birmingham, Alabama 35203
Telephone:    (205) 328-0480
Facsimile:    (205) 322-8007
E-mail: jbedsole@bakerdonelson.com

Whitney M. Harmon (Tenn. Bar No. 24985)
Zachary B. Busey (Tenn. Bar No. 29763)
BAKER, DONELSON, BEARMAN,
  CALDWELL & BERKOWITZ, PC
First Tennessee Building
165 Madison Avenue, Suite 2000
Memphis, Tennessee 38103
Telephone:    (901) 526-2000
Facsimile:    (901) 577-2303
E-mail: wharmon@bakerdonelson.com
          zbusey@bakerdonelson.com

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing document with the Clerk of the Court using the ECF system, which sent notification of the filing to all counsel of record including:

| | |
|---|---|
| Clinton H. Scott | cscott@gilbertfirm.com |
| Emily S. Emmons | eemmons@gilbertfirm.com |
| Gregg I. Shavitz | gshavitz@shavitzlaw.com |
| Jessica Farris Salonus | jsalonus@gilbertfirm.com |
| Kara Beth Huffstutter | khuffstutter@gilbertfirm.com |
| Keith M. Stern | kstern@shavitzlaw.com |
| Michael L. Russell | mrussell@gilbertfirm.com |

*Attorneys for Plaintiff and the Opt-Ins*

This, the 24th day of April, 2015.

*s/ Jenna M. Bedsole*
JENNA M. BEDSOLE